J-A05037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TIMOTHY L. GAINS | : | |
| | : | |
| Appellant | : | No. 1331 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 29, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000997-2022

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED: MARCH 17, 2025**

Appellant, Timothy L. Gaines, appeals from the judgment of sentence imposed following his bench trial convictions of three counts of criminal conspiracy to bring contraband into a prison.[1] Appellant challenges the trial court's denials of his motions for a discharge pursuant to Rule 600 and for a new trial based on the weight of the evidence. We affirm.

Appellant, serving a term of life imprisonment plus an additional term of 13 and one-half to 27 years' imprisonment, was housed at SCI Albion at all times relevant to this appeal. There, he met Jermaine Goodman, a fellow inmate. Goodman subsequently obtained parole and returned to the Philadelphia area where both he and Appellant had family members. Goodman

---

*Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 903 and 5123(c).

remained in contact with Appellant, communicating through the prison phone system, where calls were recorded, and the prison email system, where messages were monitored. They used coded language in their communications. N.T. Trial, 5/9/23, 60-70; N.T. Trial, 5/10/23, 101, 116-21, 124, 129, 132-33.

In September 2021, corrections officers employed at SCI Albion intercepted a package of paper documents addressed to Appellant through the system reserved for mail from attorneys, several pages of which appeared to be soiled, discolored, and damp in a manner consistent with having been sprayed with a liquid. The officers initially believed Appellant's mail was laced with a synthetic cannabinoid, and a preliminary scan through a detection device returned a "positive" reading, which prompted the officers to send the recovered pages for further testing. N.T. Trial, 5/9/23, 37-39, 41, 44-49, 50-51.

After discovering the laced pages in Appellant's legal mail, the officers reviewed recordings of then-recent phone calls between Appellant and Goodman, which revealed coded language referring to attempted deliveries, and e-mails that more directly discussed packages to be delivered to Appellant through the system for legal mail. The officers intercepted two more deliveries with similarly discolored and damp pages. The three packages intercepted by prison officials arrived at the prison on September 21, 25, and 28, 2021. The mail from Goodman bore the return address of the law firm of "Jose & Associates", the law firm owned by the man who lived with Goodman's

mother, and the attorney tracking number used by Attorney Jose to send his clients mail through the prison legal mail system. Attorney Jose, however, did not represent Appellant. N.T. Trial, 5/9/23, 37, 43-50, 55, 86, 94, 104-113.

Subsequent testing by the State Police laboratory determined that the substance on the soiled pages in the legal mail deliveries to Appellant was the bug repellent Diethylmetatoluamide, commonly known as "DEET." When that substance is laced into paper and smuggled into prison, it is known as "KD." The paper is torn into strips and distributed to other prisoners who smoke the paper directly or in cigarettes.[2] Appellant admitted that he was involved in the attempt to smuggle a substance into the prison and claimed that he had manipulated the other person into sending the packages with pages laced with a chemical. N.T. Trial, 5/9/23, 50-53, 103, 115.

Written complaints for Appellant and Goodman were filed on January 12, 2022. The complaint charged Appellant with multiple counts of conspiracy to bring contraband into prison and noted that he would be tried jointly with Goodman. Both Appellant and Goodman filed motions pursuant to Pa.R.Crim.P. 600 seeking discharge prior to their joint trial commencing. On March 15, 2023, the trial court presided over a hearing addressing their claims and denied both motions. The court ruled that the "earliest adjusted run date at which the Commonwealth had to proceed to bring [Appellant] to trial was March 8, 2023. However[,] it is also noted that [Appellant] was officially

---

[2] The same process of smuggling and smoking can be used for liquid synthetic cannabinoid, which is referred to as "K2." N.T. Trial, 5/9/23, 53.

notified that his case was joined with Co-Defendant Goodman and that the cases would be tried together." Order, 3/17/23, 1; Trial Court Record, 179; **see also** N.T. Jury Trial, 3/16/23, 624. The jury trial ended in a mistrial. N.T. Jury Trial, 3/16/23, 134; Order, 3/16/23; Trial Court Record, 145.

Appellant and Goodman both waived their right to be tried by a jury at the retrial, which commenced on May 9, 2023. N.T. Trial, 5/9/23, 3-12. Two investigators for the Department of Corrections testified for the Commonwealth, and the co-defendants each testified on their own behalf. After holding its decision under advisement, the trial court found Appellant guilty of three counts of conspiracy to bring contraband into the prison and acquitted him of criminal use of a communications facility. **See** Order, 5/11/23 (granting motion for judgment of acquittal); Verdict, 5/18/23; Trial Court Record, 124-127.[3]

On June 29, 2023, the court imposed concurrent terms of 18 to 36 months' imprisonment on each of the conspiracy convictions but ordered them to be served consecutively to the term of imprisonment Appellant was then serving. N.T. Sentencing, 6/29/23, 6, 15. Appellant timely filed a post-

_____

[3] The trial court found Goodman guilty of three counts of criminal conspiracy as well. **See** Docket No. CP-25-CR-0000998-2022. This Court affirmed Goodman's judgment of sentence on November 26, 2024. **See Commonwealth v. Goodman**, 2024 WL 4891768 (Pa. Super. 2024) (1324 WDA 2023).

sentence motion on July 10, 2023.[4] He asserted both trial court error in denying his Rule 600 motion and his conviction was against the weight of the evidence. **See** Order, 10/17/23, 1-5 (reciting the arguments raised in Appellant's post sentence motion); Trial Court Record, 180-184. The trial court denied both claims for relief. **Id.**

Represented by new counsel, Appellant filed a timely notice of appeal on November 8, 2023. **See** Notice of Appeal, 11/8/23; Trial Court Record, 186. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. Order, 11/16/23; Trial Court Record, 190. Appellant complied; asserting the same two issues he raised in his post-sentence motion. **See** Statement of Matters Complained of on Appeal, 1/9/2; Trial Court Record, 202-203.

In his brief, Appellant presents the following issues for our review:

The trial court erred in failing to rule that the prosecution of [Appellant] violated the Pennsylvania Rule of Criminal Procedure 600[.]

The verdict in this case was against the weight of the evidence in that the evidence did not prove that [Appellant] and his co-defendant had entered into an unlawful agreement and that the overt acts were committed in furtherance of the agreement and that [DEET] is a poison and thus contraband.

---

[4] In its order denying relief, the trial court noted that the "ten (10) day period to file a Motion for Post-Sentence Relief expired on a weekend; therefore the Post Sentence Motion was timely filed." **See** Order, 10/17/23, 1; Trial Court Record, 180. **See also** Pa.R.Crim.P. 101(c) (incorporating by reference the rules of construction in the Pennsylvania Rules of Judicial Administration including Pa.R.J.A. 107 (a)-(b), relating to the computation of time for the rule of construction relating to the exclusion of the first day and inclusion of the last day of a time period and the omission of the last day of a time period if it falls on Saturday, Sunday, or a legal holiday.

Appellant's Brief, 5.

In his first claim, Appellant argues that the trial court erred by denying his Rule 600 motion, because "[t]he only time accountable to [him] are the days that lapsed due to his requesting a continuance to obtain counsel[,]" a total of 39 days, bringing the adjusted run date to February 23, 2023. Appellant's Brief, 12. He notes that a hearing, "provided the basis for the court to make the determination that the trial was held in time." ***Id.*** He explicitly argues that the joinder of his trial with that of his co-defendant, and the fact that "co[-]defendant's trial was moved, which is completely out of the control of [Appellant], should not result in [Appellant's] waiver of the procedural protections" of Rule 600. ***Id.*** We disagree with Appellant's argument as it misconstrues the law governing Rule 600 in joint trials.

Our standard of review for a Rule 600 claim is whether the trial court's ruling was an abuse of discretion:

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial[ court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Carl*, 276 A.3d 743, 748 (Pa. Super. 2022), *appeal denied*, 292 A.3d 839 (Pa. 2023). *See also Commonwealth v. Walker*, 2025 WL 300898, *2 (Pa. Super., filed Jan. 27, 2025) (2445 EDA 2023).

Rule 600 requires that trial commence within 365 days of the filing of a written complaint. Pa.R.Crim.P. 600(A)(2)(a). The rule "explains [that] 'periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.'" *Commonwealth v. Lear*, 325 A.3d 552, 560 (Pa. 2024) (quoting Pa.R.Crim.P. 600(C)(1)). Thus, the rule "establishes two requirements that must be met for delay to count toward the 365-day deadline: (1) the Commonwealth caused the delay **and** (2) the Commonwealth failed to exercise due diligence." *Lear*, 325 A.3d at 560 (emphasis in original). "The *Lear* Court clarified that 'the causation analysis precedes the due diligence inquiry, and it is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation.'" *Walker*, 2025 WL 300898, *2 (quoting, *Lear*, 325 A.3d at 560 n.7).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain

- 7 -

those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Faison*, 297 A.3d 810, 821 (Pa. Super. 2023). *See also Commonwealth v. Bradford*, 46 A.3d 693, 702 (Pa. 2012); *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*). We may also affirm the trial court's denial of Rule 600 relief for any proper basis on the record, even if "based on an analysis different from that articulated by the trial court." *Commonwealth v. Jackson*, 765 A.2d 389, 390 (Pa. Super. 2000).[5]

Moreover, it is well settled that periods of delay caused by a co-defendant, where the Commonwealth was duly diligent with respect to that delay, are not counted against the Commonwealth for purposes of Rule 600. *See Commonwealth v. Hill*, 736 A.2d 578, 592 (Pa. 1999); *Jackson*, 765 A.2d at 395. Further, "severance is not required of the Commonwealth when it faces a possible Rule 600 violation, and the trial court should not have factored the refusal to sever in its Rule 600 analysis." *Commonwealth v. Robbins*, 900 A.2d 413, 417 (Pa. Super. 2006).

Appellant does not argue that the Commonwealth lacked due diligence. Indeed, in its order denying Appellant's Rule 600 motion the trial court found that "the Commonwealth has acted with due diligence." Order, 3/17/23; Trial

---

[5] "[A]n appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." *Commonwealth v. Diaz*, 183 A.3d 417, 421 (Pa. Super. 2018).

Court Record, 179. Instead, Appellant argues that the Rule 600 period expired for him as the result of delay caused by his co-defendant Goodman. The trial court explained that in reviewing the Rule 600 motion filed by Goodman, "it determined that the adjusted Rule 600 date had not expired prior to the time the initial jury trial in this matter was commenced[,]" the adjusted run date being March 30, 2023. Trial Court Opinion, 2. The trial court stated there "were some continuances attributable to the magisterial district judge and to the Commonwealth," but "also a continuance attributable to Co-Defendant … [when his] case [was] administratively moved from the November 2022 term of Court to the January 2023 term of Court [due to] to case re-distribution in the Erie County Public Defender's office." *Id*. 2-3. The trial court determined that the delay caused by Goodman was also excludable for Appellant because they were properly joined co-defendants. *Id.*, 3.[6]

We affirm the trial court. Here, Appellant and Goodman were properly joined co-defendants. Thus, delay caused by Goodman due to a lack of representation, where the Commonwealth was duly diligent, cannot be attributed to the Commonwealth. *See Jackson*, 765 A.2d at 395 (95–day period was excusable because a co-defendant's request for new counsel was

_____

[6] Appellant offers no argument that joinder was not proper. Indeed, "[t]he general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time consuming duplication of evidence." *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (quoting *Commonwealth v. Patterson*, 546 A.2d 596, 600 (Pa. 1988)).

beyond the control of the Commonwealth).[7] In short, because the trial court found that trial was timely for the properly joined co-defendant and the Commonwealth had been duly diligent with respect to co-defendant's delays, then Appellant was not entitled to discharge under Rule 600. **See Hill**, 736 A.2d at 592 (delays by joined co-defendant are "circumstances beyond the control of the Commonwealth").[8]

In his second issue, Appellant argues that "in this case, the jury's verdict shocks the conscience, considering the evidence presented at trial." Appellant's Brief, 13. We note that Appellant was tried by a judge after he waived his right to a jury. More importantly, Appellant instantly argues the standard for a trial court's consideration of weight claim in a post sentence motion.[9] Our standard of review is different.

_____

[7] **See also Commonwealth v. Kearse**, 890 A.2d 388, 394-95 (Pa. Super. 2005) (concluding that the Commonwealth is not required to sever co-defendant cases when faced with a possible Rule 600 violation, as a prophylactic application of the rule is not in the interest of justice and the rule must account for society's interest in the effective administration of justice).

[8] In addition, the trial court ruled the adjusted run date for Appellant, without considering delays attributable to Goodman, was March 8, 2023, or seven days prior to the commencement of the jury trial. Order, 3/17/23, 1; Trial Court Record, 179. Such *de minimis* delay beyond the adjusted run date would not warrant a discharge. **See Commonwealth v. Preston**, 904 A.2d 1, 15 (Pa. Super. 2006) (*en banc*) (holding that lower court did not abuse its discretion by denying relief where trial commenced eight days after the adjusted run date).

[9] "An allegation [raised in a motion for a new trial] that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "In order for a
*(Footnote Continued Next Page)*

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). It "is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id*. (emphasis omitted). This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Id.* at 1056.

Appellant argues that "the overall evidence in this case does not rise to the level of a verdict that [he] conspired with" Goodman "to bring any substance into the prison, or that what was brought in fell under the definition of contraband, especially poison." Appellant's Brief, 14. More specifically, he contends that: there was no evidence presented "that either of the defendants knew or believed that DEET was a poison" or that he "solicited or believed that any sort of substance" would be sent through the mail to him; that Goodman testified he did know about the DEET; that DEET is not a contraband; and that

---

defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008).

Appellant "testified that all the products that were sent to him were sent by his friends," not his charged conspirator. *Id.*, 15-17.[10]

"It is well settled that the [finder of fact] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Tejada*, 107 A.3d 788, 795–96 (Pa. Super. 2015). Here, the trial court explained at length its reasoning in denying Appellant a new trial, including credibility determinations against Appellant and Goodman, as follows:

> [Appellant's post sentence motion] is technically incorrect regarding [his] convictions. [Appellant] was convicted of three separate counts of Criminal Conspiracy/Contraband/Non-Controlled Substance. The core of each the three counts … was the conspiracy charge.
>
> The Court held the Commonwealth to the standard of proof beyond a reasonable doubt. The court determines … that the weight of the evidence did support the determinations that [Appellant] and [Goodman] had entered into an unlawful agreement and that the overt acts were committed in furtherance of the agreement.
>
> [The court set forth the specific charges under each count and the statutory definition of criminal conspiracy in 18 Pa.C.S. § 903.]
>
> At each of the Counts referred to above, the Commonwealth met its burden of proof that on those three separate dates, this [Appellant], along with … Goodman and others, had committed conspiracy, in that they had entered into an agreement by which they would introduce contraband or attempt to introduce

---

[10] The statute Appellant was found to have conspired to violate prohibits, *inter alia*, the selling, giving or furnishing "to any convict in a prison … any kind of spirituous or fermented liquor, medicine or poison (except the ordinary hospital supply of the prison …) without a written permit signed by the physician of such institution[.] 18 Pa.C.S. § 5123(c).

- 12 -

contraband into the State Correctional Facility at Albion, at the specific address listed in each of the Counts.

The Court analyzed the evidence brought forth by the Commonwealth, which consisted both of direct evidence and circumstantial evidence. The Court also weighed the credibility of Appellant, as well as [Goodman], because they each chose to testify at the time of trial. The Court, as the fact finder in a non-jury trial, must of course also apply the same law that a jury would have been provided before determining whether the Commonwealth had met its burden of proof. However, as fact finder, the Court also has the right to make credibility determinations. In non-jury trial, the Court, like a jury, is free to believe all, part, or none of the witness's testimony, including the testimony of the [d]efendants and to take their interests in the outcome of the case into account also. Therefore, the Court was free to reject [Appellant's] explanation as to his involvement, or alleged lack of involvement, in this conspiracy and was also allowed to reject his explanation as to what certain terms, phrases or communications would have meant with regard[] to the communications which were involved in bringing or attempting to bring contraband [into] the prison facility.

[The court discussed applicable law on review of a weight claim.]

Ultimately, the substances which were brought into, or attempted to be brought into, the prison may not have been exactly what the [Appellant] and his co-conspirators initially anticipated or planned on. Nevertheless, they were guilty of agreeing to commit a criminal offense and therefore the verdict must stand.

Order, 10/17/23, 1-5; Trial Court Record, 180-184.

We affirm because the trial court's ruling is reasonable and supported by the evidence, and far from an abuse of discretion. **Commonwealth v. Rice**, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting weight claim). Appellant asks this Court to substitute his evaluation of his and Goodman's credibility for that of the trial court by offering his and Goodman's testimony as conclusive when

denying knowledge and offering innocent explanations for the coded language they used to avoid surveillance. Appellant's Brief, 15-17. It would be reversible error for this Court to "step […] into the shoes of the trial judge and revisit […] the underlying question of whether the verdict was against the weight of the evidence." *Clay*, 64 A.3d at 1056. Moreover, all the alleged inconsistencies and contradictions in the testimony were brought to the attention of the trial court, which, as the factfinder, was the final arbiter of credibility and weight. *See Commonwealth v. Small*, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails).

Appellant's allegation that the "evidence merely showed that packages were mailed to [him], purportedly from an attorney's office," Appellant's Brief, 15, as if Goodman had no hand in the matter, misstates the record evidence. The investigator traced the purchase of postage for two of the packages to a credit card owned by Goodman's mother, and Goodman admitted to mailing them and to using the attorney tracking number he had access to through his mother's relationship with Attorney Jose. N.T. Trial, 5/9/23, 106, 112; N.T. Trial, 5/10/23, 112.

Appellant's insistence that the weight of the evidence did not support finding that DEET was a poison and therefore contraband under 18 Pa.C.S. § 5123(c), Appellant's Brief, 16-17, improperly discounts the testimony of an investigator, who conferred with a local poison center and determined that

DEET was harmful to humans if ingested. N.T. Trial, 5/10/23, 19. Section 5123 of the Crimes Code does not define the word "poison" specifically or refer to any other statute for a definition. Therefore, we rely on "the plain meaning of the words" of the statute. **Commonwealth v. Dellisanti**, 876 A.2d 366, 369 (Pa. 2005) (citing 1 Pa.C.S. § 1903).[11] Contrary to Appellant's argument, there was evidence that a substance harmful to humans if ingested – here, DEET smoked in the form of KD – was "poison" within the scope of Section 5123(c). For these reasons, we affirm the trial court's denial of Appellant's motion for a new trial.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/17/2025

---

[11] For example, the Merriam-Webster dictionary defines the noun "poison" as "a substance that through its chemical action kills, injures or impairs an organism" or "something destructive or harmful." Merriam-Webster Online Dictionary at https//www.merriam-webster.com/dictionary/poison (last visited Feb. 19, 2025).